GUIDRY, Judge.
The defendant, Winfred Burge, was charged with simple arson, a violation of LSA-R.S. 14:52. The defendant filed a motion to suppress evidence seized as a result of the investigation of the fire. After a hearing, the trial court granted the motion, suppressing the evidence. The State applied for a writ of certiorari to review the trial court’s ruling on the motion. We granted the writ to consider whether the evidence was properly suppressed.
FACTS
On October 14, 1981, at approximately 8:45 p.m., the Hackberry Volunteer Fire Department responded to a fire call at the Richmond Seafood Company in Hackberry, Louisiana. When the firemen arrived, the southern portion of the building was in flames. After the fire was extinguished, the firemen determined that the building was leased by the defendant, Winfred Burge, who arrived at the scene after the fire was doused. Although the firemen entered the building after the fire was doused to investigate, darkness and smoke prevented the firemen from determining the origin of the fire at that time. The chief of the Fire Department, Gerald L. Landry, told Burge that he would return the following day to determine the origin of the fire.
Early the following morning, Landry received a phone call wherein the caller advised Landry to investigate the fire closely. The caller stated that he suspected that Burge intentionally burned the building. Landry called the State Fire Marshal’s office to seek assistance in the investigation.
At approximately 3:00 p.m. the following day, Landry returned to the scene of the fire to conduct the investigation. He was joined by a Deputy State Fire Marshal, Charles E. George. During the course of the investigation, they removed a circuit breaker panel and a five gallon can partially filled with fuel. George also took photographs of the scene. The breaker panel, can and the photographs are the items of evidence sought to be suppressed.
MOTION TO SUPPRESS
The trial court held that the evidence was seized in an unconstitutional search. The court found that any search subsequent to the dousing of the fire required a warrant, and any search conducted without such a warrant is unreasonable.
In Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the Supreme Court considered the scope of the authority of firemen and fire investigators to search fire damaged premises after a fire is extinguished. In that case, the fire in question occurred in a furniture store *198 shortly before midnight. Firefighters had successfully brought the blaze under control when the fire chief arrived at approximately 2:00 a.m. to begin his investigation into the cause of the fire. The fire chief, along with a police detective, conducted an examination of the premises, wherein they took photographs and seized two plastic containers of flammable liquid. By 4:00 a.m., the fire had been extinguished and the firefighters had left the scene. The fire chief and the police detective also left the scene, as any further investigation was hampered by darkness, smoke, and steam. The fire chief returned following daybreak, at approximately 8:00 a.m., to continue the investigation. After a cursory examination, he departed and returned at approximately 9:00 a.m., accompanied by the police detective who assisted him earlier in the morning. During this investigation, additional evidence of arson was seized which was later sought to be introduced against the defendants. Some three weeks later, a State Police arson investigator entered the premises and took photographs and seized additional physical evidence. This evidence was likewise sought to be introduced against the defendants.
The Michigan Supreme Court held that once the fire was extinguished and the firefighters left the premises, a warrant was required to re-enter and search the premises, unless there was consent or the premises had been abandoned.
The Supreme Court held that the protections of the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, apply to entries and searches made by firefighters and fire investigators. Absent a recognized exception, a warrant is required to validate such searches. One such exception is recognized in cases where a warrantless entry is made at a time when there is a compelling need for official action and there is no time to secure a warrant.
The court observed that a burning building clearly presents an emergency of sufficient exigency to justify a warrantless entry into the building. The court further held that, once the fire has been extinguished, fire officials may remain on the premises for a reasonable time in order to investigate the cause of the fire. Any seizure of evidence made while conducting such an investigation is constitutional.
The court held that the evidence seized in the re-entries into the store on the morning following the fire was admissible. A warrant was not necessary because the re-entries were nothing more than a continuance of the initial search, which was temporarily delayed due to darkness, steam and smoke. The court found that all evidence seized in subsequent warrantless searches was inadmissible, since such searches were detached from the initial exigency.
In the instant case, the issue of the admissibility of the items of evidence seized turns on whether the search conducted at 3:00 p.m., the day following the fire, was a separate post-fire search or merely a continuation of the search which was begun the night before. If the search is determined to be a continuation of the initial search, the evidence seized is admissible and the trial court’s order suppressing the evidence was error.
As in Michigan v. Tyler, supra, the fire investigators in the instant case were prevented from completing their investigation into the cause of the fire because of darkness and smoke. Before he left the scene, Fire Chief Landry advised the defendant that he would resume the investigation the following day. Landry, a volunteer fireman, reported to his regular place of employment the following morning, completed the work day, and then returned to the Richmond Seafood Company at approximately 3:00 p.m. to continue his investigation of the cause of the fire.
We conclude that the search conducted on the afternoon following the fire was a continuation of the initial search conducted the previous evening. The defendant asserts that the instant ease should be distinguished from Michigan v. Tyler, supra, due to the lapse of time between the initial search and the resumption of the investigation. In our view, the lapse of several *199 hours did nothing to change the character of the search as a mere continuation of that begun previously. This is made clear by the fact that the defendant was informed on the night of the fire that the investigation into its cause was not complete, but rather would be resumed the following day.
The Supreme Court again addressed the issues here involved in the recent case of Michigan v. Clifford, — U.S. -, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984). In that case, firemen answered a call to a fire at a private residence at approximately 5:42 a.m. By 7:04 a.m., the fire had been extinguished and all fire and police personnel left the scene. Because the fire department suspected arson, a fire investigator with the arson section of the Detroit Fire Department was instructed to investigate the fire. The investigator and his partner arrived at the scene at approximately 1:00 p.m. the same day. When they arrived, a work crew was in the process of boarding up the house to secure it against intrusion. The homeowners, who were away at the time, had requested that the foregoing security measures be taken. At 1:30 p.m., the investigators entered the home with neither a warrant nor consent. They seized several items of evidence which were introduced against the defendant homeowners.
The Supreme Court found that the search conducted by the special arson investigators was unconstitutional. The court distinguished the case from Michigan v. Tyler, supra, in the following language:
“As the State conceded at oral argument, this ease is distinguishable for several reasons. First, the challenged search was not a continuation of an earlier search. Between the time the firefighters had extinguished the blaze and left the scene and the arson investigators first arrived about 1:00 p.m. to begin their investigation, the Cliffords had taken steps to secure the privacy interests that remained in their residence against further intrusion. These efforts separate the entry made to extinguish the blaze from that made later by different officers to investigate its origin. Second, the privacy interests in the residence— particularly after the Cliffords had acted — were significantly greater than those in the fire-damaged furniture store, making the delay between the fire and the mid-day search unreasonable absent a warrant, consent, or exigent circumstances. We frequently have noted that privacy interests are especially strong in a private residence.7 These facts — the interim efforts to secure the burned out premises and the heightened privacy interests in the home — distinguish this case from Tyler. At least where a homeowner has made a reasonable effort to secure his fire-damaged home after the blaze has been extinguished and the fire and police units have left the scene, we hold that a subsequent post-fire search must be conducted pursuant to a warrant, consent, or the identification of some new exigency.8 So long as the primary purpose is to ascertain the cause of the fire, an administrative warrant will suffice.” (footnotes omitted).
Two factors — the interim efforts to secure the building and the heightened privacy interest in a private residence — prompted the Supreme Court to distinguish the case from Michigan v. Tyler. Neither factor is present in the instant case. On the contrary, the record fails to show any efforts to secure the building on the part of the defendant, who was informed that the investigation would continue the following day. Because the building here involved was a commercial establishment, the privacy interest attendant to a private residence is also absent.
It is noteworthy that, in reaching the conclusion that the search was not a continuation of the previous investigation, the Supreme Court in the Clifford case relied on the fact that interim efforts were made to secure the premises, and not on-the mere lapse of time between the departure of the fire and police personnel and *200 the arrival of the arson investigators. This is consistent with our view that the lapse of time between the postponement'of the initial investigation and the subsequent resumption is not the most important factor in determining whether the subsequent search may be considered a continuation of the initial investigation. While reasonable diligence in resuming the investigation should be required, a more important consideration is whether the subsequent search is conducted to complete a job which, due to unavoidable circumstances, i.e., darkness and smoke, was necessarily postponed, or whether the subsequent search is conducted to gather evidence for a criminal prosecution. The record in the instant case supports the former.[1]
In sum, we find that, to qualify as a continuation of an initial fire investigation postponed by darkness, a search need not be resumed at the break of day. Such a requirement would be unreasonable, particularly in communities such as Hackberry, which relies on vplunteers for fire proteetion. In the instant case, Fire Chief Landry resumed the search at the earliest practicable time, under circumstances that show that the search was clearly a continuation of the initial investigation. Thus, under Michigan v. Tyler, supra, the seizure of evidence was constitutional, and the trial court judgment suppressing such evidence was error.
For the foregoing reasons, the writ granted is made peremptory, and the trial court judgment of October 12, 1983 is reversed. The motion to suppress filed by the defendant is hereby dismissed and this matter is remanded to the trial court for further proceedings consistent with the views herein expressed.
REVERSED AND RENDERED.

. The phone call to Chief Landry wherein the caller advised the Chief to look closely for evidence of arson does not, in our view, change the character of the subsequent search as a continuation of that begun the night before. Had a subsequent search been prompted by such a call, we might reach a different conclusion. However, the record clearly shows that the subsequent search was planned (and the defendant notified thereof) prior to the time the call was received.